

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARCUS SWIAT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:10-CV-354-A |
| | § | |
| CITY OF FORT WORTH, TEXAS, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
and
ORDER

After having considered the motions for summary judgment filed by defendant City of Fort Worth, Texas ("City"), and defendant J. K. Young ("Young"), respectively; the responses of plaintiff, Marcus Swiat, thereto; defendants' replies; the entire summary judgment record; and pertinent legal authorities, the court has concluded that both motions should be granted.[1]

I.

Nature of Plaintiff's Claims

Plaintiff's claims arise from events that occurred in the early morning of May 24, 2008, when a group of police officers for City, including Young, attempted to arrest plaintiff outside

---

[1] City and Young each filed a motion to strike portions of plaintiff's summary judgment evidence, to which plaintiff responded. The court has taken into account the contents of the motions to strike and plaintiff's responses in determining what weight, if any, to give plaintiff's summary judgment evidence.

a downtown Fort Worth nightclub. Plaintiff alleges that Young is liable to him under 42 U.S.C. § 1983 because Young used excessive force to secure his arrest and because Young failed to prevent another officer, defendant Mike Duer ("Duer"), from using excessive force.

Plaintiff also seeks to hold City liable under § 1983 based on the theories that City had a policy or custom that caused the deprivation of his constitutional rights and that City failed to adequately train its officers in the use of force. In addition, plaintiff contends that City has liability under state law for the "negligent use of force" by Duer and Young.

II.

## The Grounds of the Motions for Summary Judgment

A. <u>City's Motion</u>

The grounds of City's motion are that:

1. As a matter of law, plaintiff cannot succeed on his § 1983 claims against City because plaintiff cannot show (a) that City had a policy, custom, or practice that caused a deprivation of plaintiff's federal constitutional rights or (b) that City had a constitutionally inadequate training policy that caused a deprivation of plaintiff's constitutional rights.

2.  As a matter of law, plaintiff cannot succeed on its state-law claim against City because City is immune from such claim under the doctrine of sovereign immunity.

B.  <u>Young's Motion</u>

The grounds of Young's motion are that:

        1.  Plaintiff has not adduced evidence sufficient to overcome Young's pleaded qualified immunity defense.

        2.  To the extent the court finds that plaintiff asserts state-law claims against Young, such claims are barred by the election of remedies provision in section 101.106 of the Texas Civil Practice and Remedies Code.

        3.  Young has official immunity from any state-law claims against him.[2]

III.

<u>Facts</u>

Viewed in the light most favorable to plaintiff, and drawing all reasonable inferences in plaintiff's favor, the summary

---

[2] The court does not read plaintiff's complaint to assert any state-law claims against Young. In his supporting brief in response to Young's motion for summary judgment, plaintiff confirmed that his only claims against Young are brought under § 1983. <u>See</u> Br. in Supp. of Pl.'s Resp. to Young's Mot. for Summ. J. at 15.

3

judgment evidence shows the following:

On the evening of May 23, 2008, and into the early morning of May 24, 2008, plaintiff was providing the DJ services at a private party taking place at the Bent Lounge, a nightclub located in downtown Fort Worth. Around 2:00 a.m., plaintiff was carrying equipment out of the club when he noticed a crowd gathering a short distance up the sidewalk. The crowd was gathering around a group of people who were yelling at each other. Plaintiff walked toward the crowd and asked his friends what was going on.

At that point, plaintiff was grabbed from behind by Duer, who did not identify himself to plaintiff, and thrown against the glass window of the Kinko's storefront next door to the Bent Lounge. Duer told plaintiff several times to put his hands behind his back, but plaintiff refused. As Duer attempted to handcuff plaintiff, plaintiff spun away from Duer and turned back toward the original altercation, at which point another police officer, Officer McNutt ("McNutt"), approached plaintiff with his taser drawn and yelled at plaintiff to stop resisting or he would be tased. Duer again pushed plaintiff against the wall of the Kinko's store, but could not get plaintiff's hands behind his

back. At that time, Young approached, and he and Duer put plaintiff on the ground.

Once on the ground, plaintiff continued to resist the attempts by Young, Duer, and McNutt to handcuff him, even though he yelled out to the officers that he was not resisting. As plaintiff lay face down on the concrete, Duer delivered three elbow strikes to plaintiff's upper back area, and Young hit plaintiff's left thigh with his fist, but plaintiff continued to resist.

Duer then pulled his taser and told plaintiff he would be tased if he did not comply. Duer used the taser in drive-stun mode[3] in plaintiff's lower back area, but plaintiff continued to fight as if he had not been tased. Duer used the taser in drive-stun mode two more times in plaintiff's lower back. Duer then loaded a dart cartridge into the taser and fired the darts into plaintiff's backside. The darts appeared to have no effect. Duer removed the cartridge and again tried to use his Taser in drive-stun mode in plaintiff's lower back, but could not make

---

[3] The taser carried by Duer had two mode. When used in probe mode, the officer attaches a cartridge to the device that contains two small darts or "probes." The probes are connected to wires, and, when the trigger is pulled, the probes are fired in the direction the taser is aiming. If the probes strike the suspect, a circuit is completed, delivering current to the suspect and causing neuromuscular incapacitation in the area between the probes. In drive-stun mode, there are no projectiles, and the officer must press the device directly against the suspect. The very instant the device touches the suspect, it causes pain, but no muscular incapacitation.

good contact with plaintiff because plaintiff was moving around. Because plaintiff still was not under control, Duer kicked plaintiff in the thigh, attempting to strike his common peroneal nerve.

Duer then stepped back, loaded a second dart cartridge in his Taser, and fired the darts into plaintiff's back. At that point, the officers were able to handcuff plaintiff's hands behind his back. Once plaintiff was handcuffed, none of the officers used any additional force against plaintiff. An ambulance was called and plaintiff was given medical attention. The ambulance records reflect that plaintiff was uncooperative and possibly under the influence of alcohol.

Later in the day on May 24, 2008, plaintiff was admitted to Texas Health Harris Methodist Fort Worth Hospital. He was diagnosed with and treated for a concussion, a wrist strain, and contusions of the ribs and jaw.

IV.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for

summary judgment bears the burden of showing that there is no genuine dispute of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 325 (1986). The movant can carry this burden by pointing out the absence of evidence to support an essential element of the nonmovant's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.

Once the movant has carried its burden under Rule 56(a), the nonmovant must go beyond its pleadings and set forth specific facts showing there is a genuine dispute for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Not every factual dispute is sufficient to defeat a properly supported motion for summary judgment; the disputed fact must be "material," and the dispute over it must be "genuine." <u>Id.</u> A fact is "material" if its resolution might affect the outcome of the case under the governing law. <u>Id.</u> A dispute over a material fact is "genuine" if the evidence is such that a rational fact finder could resolve the dispute in favor of either party. <u>Id.</u> at 250.

In determining whether there is a genuine dispute of material fact, the court views the evidence in the light most favorable to the nonmovant and draws all reasonable inferences in

the nonmovant's favor. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

V.

<u>Analysis</u>

A. <u>Plaintiff's Claims Against City</u>

1. <u>42 U.S.C. § 1983</u>

Plaintiff's claim that City is liable under § 1983 is based on three contentions. First, plaintiff contends that City has a custom and practice of "allowing an unnecessary escalation of force in the investigation of mild crimes, to which the police department's chain of command acquiesces." Pl.'s Resp. to City's Mot. for Summ J. at 8. Second, he contends that City's policy on the use of tasers is "full of flaws and gaps." <u>Id.</u> at 13. Third, he contends that City failed to adequately train its police officers in the use of force.

It is well-settled that a city cannot be held liable for the acts of its employees solely on a theory of <u>respondeat superior</u>. <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978). To establish municipal liability under § 1983, a plaintiff must prove three elements: (1) an official policy (2) promulgated by a municipal policymaker that (3) was the moving force behind the violation of a constitutional right. <u>Id.</u> "Official policy" may

8

take one of several forms. It could be a policy statement, ordinance, regulation, or decision officially adopted or promulgated by the city's policymaking authority; or, it could be a persistent, widespread practice of city officials or employees which, although not formally authorized by the city, is so common as to constitute a custom that fairly represents city policy. Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc). To show that a particular policy or custom was the "moving force" behind a constitutional deprivation, the plaintiff must show either (1) that the policy or custom itself violated federal law or authorized the deprivation of federal rights, or (2) that the policy or custom was adopted by the city's policymakers with deliberate indifference to its obvious and known consequences. Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 309 (5th Cir. 2004).

Plaintiff has not adduced any summary judgment evidence suggesting that City has a custom or policy that was the moving force behind the alleged violations of his constitutional rights. While plaintiff contends that City had a custom of allowing its officers to use unnecessary force in the investigation of mild crimes, there is nothing in the record showing that the use of unnecessary force by City police officers was so common that it

could fairly be said to represent City policy. And, City has adduced evidence showing that a police officer following City's policies in the use of force would not violate a person's constitutional rights.

Nor has plaintiff adduced evidence of facts that would expose City to liability for failing to adequately train its officers. The failure to train can amount to a policy exposing a city to liability under § 1983 only if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutions rights on account of novices in law enforcement. Peterson v. City of Fort Worth, 588 F.3d 838, 849 (5th Cir. 2009). Plaintiff's complaint is, essentially, that Duer and Young were not trained in arrest tactics, the use of tasers, and the use of force as often as they should have been. However, plaintiff has not adduced any evidence that City's failure to train Young and Duer in those topics more frequently amounted to deliberate indifference to the rights of its citizens. To the contrary, City has presented evidence that Duer and Young went through extensive training on the use of force and arrest tactics in the police academy and in the months immediately prior to their altercation with plaintiff.

Plaintiff has failed to show that City is liable to him under § 1983 under any of the theories of liability he advances.

2. State Law

The doctrine of sovereign immunity insulates City from plaintiff's state-law claim against it. Under the doctrine of sovereign immunity, a city cannot be held liable for the actions of its employees unless there is a constitutional or statutory provision waiving such immunity. City of Amarillo v. Martin, 971 S.W.2d 426, 427 (Tex. 1998). The Texas Tort Claims Act ("TTCA") waives sovereign immunity for, inter alia, personal injury or death caused by the use of tangible personal property "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 2011). However, the TTCA expressly exempts from such waiver any claim "arising out of assault, battery, false imprisonment, or any other intentional tort . . . ." Id. § 101.057(2).

City contends that the TTCA does not waive its sovereign immunity from plaintiff's state-law claim because, even though such claim is framed in terms of negligence, the conduct about which plaintiff complains is essentially assault and battery, thus placing plaintiff's claim within the intentional tort

exception to the TTCA's waiver of immunity. Plaintiff responds by stating that he did not allege that Duer and Young committed an intentional tort, but rather that they negligently used tangible personal property.

"A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence." Harris County v. Cabazos, 177 S.W.3d 105, 112 (Tex. App.--Houston [1st Dist.] 2005, no pet.). "If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA." Id. at 111. The facts on which plaintiff bases his negligence claim are the same facts underlying his excessive force claim. Such facts amount to a claim for assault. A person commits an assault if he intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. Tex. Penal Code Ann. § 22.01(3) (West 2011); Forbes v. Lanzl, 9 S.W.3d 895, 900 (Tex. App.--Austin 2000, pet. denied) (citing § 22.01 as the standard for civil assault). Even if Duer and Young did not intend to injure plaintiff, they should have reasonably believed that plaintiff would regard their punching him, kicking him, and shooting him

12

with a taser as offensive physical contact. Thus, the TTCA causes City to not have liability to plaintiff under state law.

For the reasons given above, City is entitled to summary judgment as to all claims asserted by plaintiff against it.

B. <u>Plaintiff's Claim Against Young</u>

For the reasons discussed under this subheading, the court concludes that Young is entitled to summary judgment as to plaintiff's claims against him because plaintiff has not adduced evidence sufficient to overcome Young's qualified immunity defense.

1. <u>Qualified Immunity, Generally</u>

The doctrine of qualified immunity protects government officials from civil liability insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. ---, 129 S. Ct. 808, 815 (2009). "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Id.</u>

When a defendant pleads qualified immunity as an affirmative defense and moves for summary judgment on that basis, the court must answer two questions: First, do the facts shown by the plaintiff demonstrate that the defendant violated a constitutional right? And, second, was the right clearly established such that it would have been clear to a reasonable officer in the defendant's position that his conduct was unlawful? Id. at 816; Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009). If the facts shown by plaintiff do not make out a violation of a constitutional right, or, if the right was not clearly established, the defendant is entitled to qualified immunity. Pearson, 129 S. Ct. at 816; Ontiveros, 564 F.3d at 382.

2. Excessive Force

Plaintiff's claim that Young used excessive force against him implicates the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 388 (1989). To establish that Young violated the Fourth Amendment, plaintiff must show that Young used force that was objectively unreasonable under the circumstances and that plaintiff suffered injury as a result. Id. at 388, 395-97. In determining whether the force used was objectively unreasonable, the court must balance the amount of force used against the need

14

for that force. Id. Facts material to the inquiry include the severity of the crime at issue, whether plaintiff posed a threat to the safety of the officers, and whether he was actively resisting arrest or attempting to flee. Id. The court judges the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene, making allowances "for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving . . . ." Id. at 396-97.

The record discloses that Young used force against plaintiff by helping Duer put plaintiff on the ground and by striking plaintiff in the upper left thigh with his fist while plaintiff was on the ground. In an affidavit included in his appendix to his motion for summary judgment, Young explained that he was prompted to help Duer because he saw plaintiff resisting Duer's attempts to handcuff him. Young stated that he helped Duer put plaintiff on the ground so that they could better control plaintiff's movements. Once on the ground, plaintiff continued to fight Duer's attempts to place him in handcuffs, so Young delivered what he calls a "distractionary" punch to plaintiff's leg in order to make him comply. Young's description of plaintiff's resistance is corroborated by the affidavit testimony

of Duer and John David Shepherd, a non-party eyewitness to the altercation.

Plaintiff has not directed the court's attention to any evidence in the record from which a rational fact finder could conclude that plaintiff was not resisting arrest as Young described or that Young's conduct was not as he described and for the purposes he described. Plaintiff points to (1) Officer Duer's testimony that he heard plaintiff say, while on the ground, that he was not resisting, and (2) a video of the incident recorded by one of plaintiff's friends and entered into the record by the parties. Neither piece of evidence is sufficient to create a genuine dispute as to whether plaintiff was resisting arrest or that Young was not legitimately assisting Duer after plaintiff started resisting arrest. Duer's testimony that plaintiff exclaimed he was not resisting does not show that plaintiff's actions matched his words. And, the video begins after plaintiff was on the ground and after Young hit plaintiff's leg; therefore, it does not show anything about plaintiff's resistance at the points in time when Young used force against plaintiff. Moreover, the video tends to support Young's statements that plaintiff was physically resisting the officers,

inasmuch as it shows plaintiff laying on top of his hands, and, at one point, swinging wildly at the officers.

In light of plaintiff's undisputed physical resistance to Duer's attempts to arrest him, it was objectively reasonable under the circumstances for Young to do the things he did in order to help bring plaintiff under control. This is true even if a fact finder were to resolve the remaining disputed facts in favor of plaintiff, i.e., even if plaintiff was not intoxicated and even if he was not involved the original altercation outside the nightclub. Thus, the facts shown by plaintiff fail to demonstrate that Young used excessive force in the course of plaintiff's arrest, and Young's motion as to plaintiff's excessive force claim should be granted.

   3.   Young's Failure-to-Intervene

The facts shown by plaintiff also fail to demonstrate that Young violated plaintiff's Fourth Amendment rights by failing to intervene with the alleged used of excessive force by Duer. "An officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of force may be liable under section 1983." Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995). However, to be liable on a failure-to-intervene theory, Young must have had a reasonable opportunity to

realize the excessive nature of the force being used by Duer and a reasonable opportunity to intervene and stop it. Id. The undisputed evidence shows that Duer was struggling to subdue plaintiff when Young took the actions plaintiff contends were excessive force. There is no evidence that Young saw Duer's interactions with plaintiff before he saw plaintiff resisting arrest. Nor is there any evidence that, in the midst of struggling with plaintiff, Young could have evaluated the degree of force being used by Duer, and much less that he could have done something to stop it.[4]

Thus, the court has concluded that Young is also entitled to summary judgment, and that all claims brought by plaintiff against Young should be dismissed.

VI.

Order

For the reasons given above,

The court ORDERS that the motions for summary judgment filed by Young and City be, and are hereby, granted.

---

[4] Because the court has determined that the facts shown by plaintiff do not demonstrate that Young violated one of plaintiff's constitutional rights, the court need not address the second prong of the qualified immunity inquiry: whether the right was "clearly established."

The court further ORDERS that all claims asserted by plaintiff against Young and City be, and are hereby, dismissed.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such dismissals.

SIGNED June 28, 2011.

_____
JOHN McBRYDE
United States District Judge